## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEFFERSON PARISH**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 13-6717**

**EXXON MOBILE CORP., et al**                    **SECTION:  G(5)**

### ORDER

Before the Court is Plaintiff Jefferson Parish's (the "Parish") "Motion to Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion.

### I. Background

This case is one of several filed by the Parish against various defendants for alleged violations of permits issued pursuant to the State and Local Coastal Resources Management Act of 1978 ("SLCRMA"). The Parish filed a petition in the 24th Judicial District Court for the Parish of Jefferson on November 11, 2013, wherein it seeks damages and other relief for violations of SLCRMA and the state and local regulations, guidelines, ordinances, and orders promulgated thereunder (collectively, the "CZM Laws").[2] The Parish disavows at great length any other type of claim, cause of action, or legal theory potentially cognizable on the facts alleged, including any that could form the basis for jurisdiction in a federal court.[3]

Defendants in this action are nine oil and gas companies, including four Louisiana companies

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 1-2.

[3] *Id.* at ¶ 33.

1

(collectively, "Defendants").    On December 18, 2013, four Defendants removed the case to this Court, alleging the following bases for original jurisdiction in federal court: (1) diversity jurisdiction; (2) Outer Continental Shelf Lands Act ("OCSLA"); and (3) general maritime law.[4]  The Parish filed the pending motion to remand on January 15, 2014.[5] On July 25, 2014, the Court issued an Order administratively closing the case and deferring its ruling on the motion to remand until another section of this Court resolved a motion to remand presenting similar issues.[6] On December 1, 2014, that court granted remand in the case before it.[7] On January 9, 2015, Defendants filed a supplemental memorandum in opposition to remand,[8] and on January 29, 2015, the Parish filed a supplemental memorandum in support of remand.[9] Accordingly, the pending motion is ripe for decision at this time.

---

[4] Rec. Doc. 1 at ¶ 6.  Defendants additionally assert in their Notice of Removal that this case is properly removed as a "mass action" under the Class Action Fairness Act ("CAFA"). However, Defendants state in their opposition to remand that intervening case law has altered the applicability of CAFA to this case. Accordingly, the Court does not address these grounds for removal.

[5] Rec. Doc. 22.

[6] Rec. Doc. 54.

[7] *See Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.*, No. 13-6693, 2014 WL 6750649 (E.D. La. Dec. 1, 2014). Other sections of this district court have subsequently also granted remand in similar cases before them, each for substantially the same reasons as articulated in *Total.  See, e.g., Plaquemines Parish v. Rozel Operating Co.*, No. 13-6722, 2015 WL 403791 (E.D. La. Jan. 29, 2015) (Africk, J.); *Jefferson Parish v. Anadarko E&P Onshore LLC*, No. 13-6701 (E.D. La. Mar. 9, 2015) (Lemelle, J.); *Plaquemines Parish v. Hilcorp Energy Co.*, No. 13-6727, 2015 WL 1954640 (E.D. La. Apr. 29, 2015) (Feldman, J.); *Plaquemines Parish v. Devon Energy Production Co., LP et al.*, No. 13-6716 (E.D. La. May 12, 2015) (Barbier, J.); *Plaquemines Parish v. Linder Oil Co., et al.*, No. 13-6706 (E.D. La. May 15, 2015) (Morgan, J.); *Jefferson Parish v. Equitable Petroleum Corp.*, No. 13-6714 (E.D. La. May 18, 2015) (Vance, J.); *Plaquemines Parish v. Palm Energy Offshore, LLC et al*, No. 13-6709 (E.D. La. May 26, 2015) (Fallon, J.).

[8] Rec. Doc. 72.

[9] Rec. Doc. 73.

## II. Parties' Arguments

### A.    Defendants' Arguments in Support of Removal

In their Notice of Removal, Defendants state that this case is removable because diversity jurisdiction exists under 28 U.S.C. § 1332.[10] First, Defendants contend that the State of Louisiana is not a real party to this litigation, and the Parish lacks statutory authority to bring an action on behalf of the State.[11] Next, Defendants argue that diversity of citizenship exists in this case because the Parish has improperly joined the non-diverse Defendants in an attempt to defeat diversity jurisdiction.[12] Defendants rely on a misjoinder theory established in *Tapscott v. MS Dealer Service Corp.*, "wherein the Eleventh Circuit recognized that improper joinder may have occurred where a diverse defendant is joined with a non-diverse defendant with whom it does not have joint, several, or alternative liability, and the claims have no real connection to each other."[13] According to Defendants, the Fifth Circuit and district courts therein have recognized the *Tapscott* rule of fraudulent misjoinder, which involves a two-step analysis: (1) a determination as to whether there has been "procedural misjoinder" pursuant to the relevant state or federal joinder law, and (2) a determination as to whether the misjoinder was egregious.[14] Defendants contend that Louisiana state law provides that two or more parties may be joined in the same lawsuit if there is a community of

---

[10] Rec. Doc. 1 at p. 3.

[11] *Id.* at p. 4.

[12] Rec. Doc. 1 at p. 2.

[13] *Id.* at p. 9 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2009)).

[14] *Id.* at pp 9–10 (citing, *e.g.*, *Crocket v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006)).

interest between them.[15] A "community of interest," Defendants aver, exists where there is enough factual overlap between the different actions or parties to make it "commonsensical" to litigate them together, and where there is shared or common liability with respect to the subject matter at issue.[16] In this case, Defendants contend, the claims asserted in this single lawsuit against nine different Defendants "are so factually disconnected that the misjoinder here was clearly egregious."[17]

Next, Defendants argue that removal jurisdiction is appropriate because this action arises "in connection with" oil and gas operations conducted on the outer Continental Shelf (the "OCS").[18] According to Defendants, 43 U.S.C. § 1349(b)(1) provides that "the district courts of the United States shall have jurisdiction in cases and controversies arising out of, or in connection with, any operation conducted on the outer Continental Shelf which involves exploration, development, or production of minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals."[19] This case falls under OCSLA, Defendants aver, because the allegedly violated permits at issue here involve offshore pipelines that transport oil and gas products from the OCS to the Operational Area.[20] Additionally, Defendants argue that the Parish's requested relief includes the return of the Operational Area to its original condition, which would require Defendants to dismantle the pipeline infrastructure and "would threaten and impair the efficient exploitation of

---

[15] *Id.* (*citing* LA. CODE CIV. P. art. 463).

[16] *Id.* at p. 11.

[17] *Id.* at p. 12.

[18] *Id.* at p. 14.

[19] *Id.* at p. 15.

[20] *Id.* at p. 17.

the minerals of the [OCS]."[21]

Finally, Defendants argue that removal is proper under 28 U.S.C. §§ 1333 and 1441(a) because the Petition asserts general maritime claims.[22] According to Defendants, a party seeking to invoke federal admiralty jurisdiction must demonstrate that (1) the conduct complained-of occurred on navigable water or that injury suffered on land was caused by a vessel on navigable water, and (2) that the incident has a potentially disruptive impact on maritime commerce and shows a substantial relationship to traditional maritime activity.[23] Defendants state that both elements of this test are satisfied here because the Parish "claims damages under permits issued for dredging by vessels on navigable water."[24] Further, Defendants state that general maritime claims are removable absent an independent basis for federal jurisdiction under the 2011 amendments to 28 U.S.C. § 1441(a).[25]

**B.       *The Parish's Arguments in Support of Remand***

The Parish filed the pending "Motion to Remand" on January 15, 2014, wherein it argues that  this Court does not have removal jurisdiction under any of the theories advanced by Defendants. First, the Parish contends that there is no diversity jurisdiction because the State of Louisiana is a plaintiff to this lawsuit pursuant to Louisiana Revised Statute 49:214.36(D), which provides:

The secretary, the attorney general, an appropriate district attorney, or a local

---

[21] *Id.* at p. 20.

[22] *Id.* at p. 22.

[23] *Id.* at p. 22 (*citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995)).

[24] *Id.* at p. 23.

[25] *Id.* at p. 24.

5

> government with an approved program may bring such injunctive, declaratory, or
> other actions as are necessary to ensure that no uses are made of the coastal zone for
> which a coastal use permit has not been issued when required or which are not in
> accordance with the terms and conditions of a coastal use permit.[26]

According to the Parish, this provision authorizes a parish with an approved coastal zone program to sue on behalf of the State, regardless of whether the uses or permits at issue pertain to uses of state or local concern.[27] If the Louisiana legislature had intended to limit the authority of local governments under subsection D to uses of local concern, the Parish argues, it would have included such a limitation in the statute.[28] The Parish contends that when a political subdivision is statutorily authorized to bring a claim on behalf of the state, and the state is a real party in interest, removal jurisdiction premised upon diversity does not exist.[29]

Next, the Parish contends that the *Tapscott* rule of egregious misjoinder has not been adopted by the Fifth Circuit but, even under *Tapscott*, there is no egregious misjoinder in this case.[30] According to the Parish, *Tapscott* has been applied in this district court by analyzing joinder rules under Louisiana Code of Civil Procedure Article 463, which states that cumulation of claims is proper when the parties named as defendants have a "community of interest."[31] Here, the Parish argues, the requirement of a "community of interest" is easily met because the claims alleged against

---

[26] Rec. Doc. 22-1 at p. 3.

[27] *Id.*

[28] *Id.* at p. 4.

[29] *Id.* at p. 5 (*citing Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366-367 (5th Cir. 1996); *Moor v. Alameda County*, 93 S.Ct. 1785 (1973); *Postal Telegraphy Cable Co. v. Alabama*, 15 S.Ct. 192 (1894)).

[30] *Id.* at p. 8.

[31] *Id.* at p. 9 (*citing Ngo v. Essex Ins. Co.*, 2008 WL 4544352, at *3 (E.D. La. 2008)).

all of the defendants are based on identical causes of action and identical legal theories.[32] Moreover, according to the Parish, there is enough factual overlap in this case "to make it commonsensical" to litigate the claims together.[33] The Parish explains that it purposefully cumulated its claims in this case based on the oil and gas field involved.[34] Drilling and production activities within a single field, according to the Parish, are governed by a common set of Fieldwide Orders promulgated by the Louisiana Department of Natural Resources ("LDNR"), most of the operations within a field employ the same technology and methods, and oil and gas production within a field is typically supported by common or shared infrastructure and processing facilities.[35] Moreover, the Parish contends, because all of the wells in a particular field produce from a common reservoir or formation, the chemical makeup of the petroleum and the produced water extracted within a field will be the same or very similar, and will cause the same or very similar pollution if released to the environment.[36] These commonalities, according to the Parish, will result in numerous issues of highly technical science and fact, the litigation of which on a case-by-case basis would be cost prohibitive for both parties to this lawsuit.[37] Moreover, the Parish argues that de-cumulation of its claims may result in hundreds, perhaps thousands, of individual actions, and would ignore "the fact that many of the regulatory violations have extended for decades and caused extensive damage and contamination

---

[32] *Id.* at p. 10.

[33] *Id.* at pp. 10–11.

[34] *Id.* at p. 11.

[35] *Id.*

[36] *Id.*

[37] *Id.* at pp. 11–12.

in the coastal zone."[38]

Turning to whether this Court has removal jurisdiction under OCSLA, the Parish argues that neither the complained-of activity nor the resulting damage occurred on an OCSLA situs.[39] The Parish cites *Barker v. Hercules Offshore, Inc.* to support its argument that OCSLA jurisdiction requires that the facts underlying the complaint occur on the Outer Continental Shelf (the "OCS").[40] Under 42 U.S.C. § 1331(a), the Parish argues, Congress defined the term "Outer Continental Shelf" to include all submerged lands lying seaward and three miles outside state waters, "and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control."[41] The Parish states that in this case, all of the exploration, production, and transportation activities complained of in the petition occurred in the Louisiana Coastal Zone; none occurred on the OCS.[42]

With respect to whether this Court has maritime removal jurisdiction, the Parish first contends that a general maritime claim does not present a federal question, and that the saving to suitors clause of 28 U.S.C. § 1333 prevents removal of general maritime claims.[43] The Parish contends that, under the Supreme Court's holding in *Romero*, the purpose of the saving to suitors clause is to preserve the role of the States in the administration of maritime law, so any interpretation of federal jurisdiction that would render all maritime actions removable would subvert the intent of

---

[38] *Id.* at p. 12.

[39] *Id.* at p. 13.

[40] *Id.* (*citing Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (citation omitted)).

[41] *Id.* at pp. 13–14.

[42] *Id.* at p. 14.

[43] *Id.* at p. 15.

the original savings clause.[44] The Parish cites the Fifth Circuit's decision in *Barker* to support its

argument that the savings clause, of its own force, prevents removal absent diversity.[45]

Even if this Court should find that maritime claims are removable, the Parish argues, remand

would still be appropriate because its claims are not maritime tort claims.[46] According to the Parish,

the *Grubart* test for maritime tort jurisdiction provides:

> The connection test raises two issues. A court, first, must "assess the general features
> of the type of incident involved" to determine whether the incident has "a potentially
> disruptive impact on maritime commerce." Second, a court must determine whether
> "the general character" of the "activity giving rise to the incident" shows a
> "substantial relationship to traditional maritime activity."[47]

The Parish contends that the petition disclaims any intent to pursue maritime tort claims, so "the

application of the *Grubart* test to the present facts is suspect."[48] But even under *Grubart*, according

to the Parish, maritime jurisdiction would not exist because "it is well established in the federal

jurisprudence that oil and gas exploration and production activities are not traditional maritime

activities."[49] The Parish avers that the "general character" of the complained-of activity in this case

is the failure of Defendants to comply with coastal zone permitting regulations, and such activity

bears no "substantial relationship to traditional maritime activity."[50]

Finally, the Parish argues that if the Court finds that its claims trigger maritime jurisdiction

---

[44] *Id.* at p. 16 (*citing Romero v. International Terminal Operating CO.*, 358 U.S. 354, 371-72 (1959)).

[45] *Id.* (*citing Barker*, 713 F.3d at 219).

[46] *Id.* at p. 17.

[47] *Id.* (*citing  Grubart*, 513 U.S. at 534).

[48] *Id.*

[49] *Id.* (*citing*, e.g., *Herb's Welding v. Gray*, 470 U.S. 414, 425 (1985)).

[50] *Id.* at p. 18.

and are removable to federal court, the Court should consider abstention under *Burford v. Sun Oil*.[51] According to the Parish, federal courts are required to abstain under *Burford* when the State's interests in maintaining uniformity in the treatment of an essentially local problem and retaining local control over difficult questions of state law bearing on policy problems of substantial public import outweigh the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court.[52] Here, the Parish contends, Louisiana's interest in maintaining uniformity in the application of the CZM Laws outweighs the federal interest in adjudication of this lawsuit in federal court.[53]

### C.      *Defendants' Arguments in Opposition to Remand*

In reply, Defendants argue first that remand is not appropriate because diversity jurisdiction exists in this case.[54] Defendants contend that the Parish has improperly joined in one lawsuit independent actions against nine diverse and non-diverse defendants, and that the Parish cannot evade diversity jurisdiction by joining claims against the diverse defendants with claims against the non-diverse defendants where the claims are distinct and the Defendants are not jointly liable.[55] According to Defendants, the claims in this case are based on 229 separate permits, and the particular procedure, methods, and equipment employed by each defendant, as well as the applicable regulations and standards, will vary by activity, by defendant, and by time period.[56] Defendants

---

[51] *Id.* at p. 20 (*citing Burford v. Sun Oil*, 319 U.S. 315 (1943)).

[52] *Id.* (*citing Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

[53] *Id.* at pp. 20–21.

[54] Rec. Doc. 37 at p. 5.

[55] *Id.* at p. 6.

[56] *Id.*

argue that the Parish's action is properly viewed as at least nine separate actions, each with its own particular facts and evidentiary burdens.[57] Defendants also contend that the Parish's reference to Fieldwide Orders is a red herring because the Parish does not assert a single claim based on an alleged violation of an LDNR Fieldwide Order.[58] Defendants argue, additionally, that there is no alleged shared or common liability in this case, and that this is further reason to find the claims egregiously misjoined under *Tapscott.*[59]

Defendants also argue that the Parish cannot escape this Court's diversity jurisdiction by merely claiming to represent the State of Louisiana with no authority do so.[60] Defendants contend that the Parish lacks authority – statutory or otherwise – to assert claims under the coastal zone management laws on behalf of Louisiana.[61]  The State has not made an appearance in this lawsuit, Defendants argue, and the Parish lacks statutory authority to represent the State for any claims arising under SLCRMA.[62] Additionally, Defendants contend that the only claims the Parish purports to make "on behalf of the State" relate to permits issued by the State for "uses of state concern," which SLCRMA expressly prohibits the Parish from regulating.[63] Finally, Defendants argue that the State has never been found to be a real party in interest to a lawsuit brought by a party who is not

---

[57] *Id.* at p. 9 (*citing, e.g.*, *Broussard v. Hilcorp Energy Co.*, 998 So.2d 946 (La. App. 3 Cir. 2008); *Accardo v. Lafayette Ins. Co.*, 06-8568, 2007 WL 325368 (E.D. La. Jan. 30, 2007) (Vance, J.)).

[58] *Id.* at p. 12.

[59] *Id.* at p. 13.

[60] *Id.*

[61] *Id.* at p. 14.

[62] *Id.*

[63] *Id.* at p. 16.

authorized to act on the State's behalf or protect the State's rights, if any, in that dispute.[64]

Turning to whether OCSLA provides an independent basis for this Court's exercise of jurisdiction, Defendants argue that this case involves an "operation" on the OCS because the permits at issue were are associated with the modification and maintenance of pipelines that form part of an OCS operation.[65] Additionally, Defendants argue that the suit arises out of, or in connection with, an OCS operation because the dispute affects the efficient exploitation of minerals from the OCS.[66] Next, Defendants contend that OCSLA does not contain a situs requirement or a general jurisdictional grant.[67]

Defendants next argue that remand should be denied because this Court has maritime jurisdiction over this lawsuit.[68] Defendants contend that the Parish's claims based on Defendants' operations and dredging activities in and around the canals, marshes, and waters bordering Louisiana's coast give rise to this Court's maritime jurisdiction.[69] Defendants additionally aver that maritime claims are removable under 28 U.S.C. § 1441, as amended in 2011, regardless of the citizenship of the parties.[70] According to Defendants, the amended verison of section 1441 allows removal of all claims that fall within the federal court's original jurisdiction without requiring

---

[64] *Id.*

[65] *Id.* at p. 23.

[66] *Id.* at p. 24.

[67] *Id.* at pp. 26–27.

[68] *Id.* at p. 32.

[69] *Id.*

[70] *Id.*

diversity or imposing any other caveats or restrictions.[71] Defendants contend that the saving to suitors clause merely preserves a plaintiff's right to file a case in state court, but says nothing about the circumstances under which the case can be removed to federal court.[72]

According to Defendants, the Parish's claims arise under general maritime law because both the "location" and "connection" tests of *Grubart* are satisfied here.[73] First, with respect to the location test, Defendants argue that the Petition, on its face, alleges injuries suffered on land purportedly caused by vessels on navigable waters, including the erosion of marshes, the degradation of the Operational Area, and the increased risk of damage from storm-generated surges and other flooding damage.[74] Defendants contend that dredges are vessels, and that the activities causing injury occurred on navigable waterways because at least some of the permits were issued to "[p]erform work in or affecting navigable waters of the United States."[75] Next, Defendants argue that the connection test is satisfied because the Parish's claims based on dredging activities are potentially disruptive to maritime commerce.[76] Defendants cite *In re Ingram Barge Co.* to support their argument that dredging affects maritime commerce.[77]

Finally, Defendants contend that if abstention were appropriate, the proper result under *Burford* would be dismissal, not remand, due to the "substantial federal interest and multiple

---

[71] *Id.* at pp. 33–34.

[72] *Id.* at p. 35.

[73] *Id.* at p. 39.

[74] *Id.*

[75] *Id.* at pp. 40–41.

[76] *Id.* at p. 41.

[77] *Id.* (*citing In re Ingram Barge Co.*, No. 05-4419, 2007 WL 837181, at *6 (E.D. La. 2007) (Berrigan, J.)).

grounds for federal jurisdiction involved here."[78] According to Defendants, *Burford* permits, but does not require, a federal court to abstain from actions that present difficult questions of state law.[79] Defendants aver that *Burford* does not generally apply to cases, like this one, in which damages are sought.[80]

### D.    The Parish's Supplemental Authority

The Parish argues that Louisiana Act No. 544, which was signed into law on June 6, 2014, confirms that local government entities with approved programs have the right to bring enforcement actions under LA. REV. STAT. 49:214.36 for the violation of state permits within their respective jurisdictions.[81] According to the Parish, when an action filed by a local governmental entity under LA. REV. STAT. 49:214.36, as amended by Act 544, alleges damages arising from violations of state permits or the failure to obtain state permits when required to do so, the State of Louisiana is a real party in interest.[82]

### E.    The Parish's Reply Memorandum

In response to Defendants' memorandum in opposition to remand, the Parish cites *Deepwater Horizon* to support its argument that there is no OCSLA jurisdiction in this case because both the complained-of activity and the complained-of damage occurred wholly outside the OCS.[83] The Parish additionally contends that the complaint here does not contain allegations of complained-

---

[78] *Id.* at p. 46.

[79] *Id.*

[80] *Id.* at p. 46.

[81] Rec. Doc. 40 at p. 1.

[82] *Id.* at p. 2.

[83] Rec. Doc. 48 at p. 3 (*citing In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014)).

of operations on the OCS, but instead is limited to statutory, regulatory, and permit violations related strictly to "uses" of "state and local concern," which by definition are the activities in the coastal zone specified in LA. REV. STAT. 49:214.25.[84] Additionally, the Parish argues that "[i]t makes no sense to argue, as defendants do here, that Congress intended federal law to apply via the OCSLA [sic] to damage-causing operations in the coastal zone when the CZMA consistency provisions mandating the application of state law in the coastal zone express a directly contrary intent."[85]

Next, the Parish reavers that the State's status as a real party in interest destroys diversity because LA. REV. STAT. 49:214.36(D) delegated authority to the Parish, as a political subdivision, to enforce a state claim.[86] The Parish contends that Act 544 of 2014 contains an explicit acknowledgment that parishes have a right to receive money collected from enforcement actions based on violations of state-issued coastal use permits.[87]

With respect to the removal of maritime cases, the Parish contends that removal on the basis of admiralty jurisdiction is "an anathema" for three reasons.[88] First, the Parish reavers that "the most important purpose of the saving-to-suitors clause in § 1333" is to protect an admiralty plaintiff's right to a jury trial, and that the saving-to-suitors clause prohibits the removal of any maritime claims in this case since "there is no way for plaintiffs to have a trial by jury in this Court."[89] Next, the Parish contends that district courts do not have original jurisdiction over maritime cases brought

---

[84] *Id.* at p. 5.

[85] *Id.* at p. 9.

[86] *Id.* at p. 9.

[87] *Id.* at p. 13.

[88] *Id.* at p. 14.

[89] *Id.* at pp. 14–15.

in state court.[90] Finally, the Parish states that the saving-to-suitors clause expressly prohibits removal of cases within its coverage.[91] The Parish also reavers that the 2011 amendments to § 1441(b) do not support removal into admiralty because the previous version seemed to impose a forum-defendant constraint on removal into admiralty, and the present version confines the forum-defendant constraint to diversity cases.[92]

The Parish additionally reavers that, under the *Grubart* test, its claims do not arise under maritime law.[93] First, with respect to the location test, the Parish argues that most of the oilfield-related dredging in Jefferson Parish involved private access canals that were dredged for the purpose of conducting exploration and production activities, and that these private canals do not satisfy the location test because they were either built on private property or on state land owned by the state in its capacity as a private person.[94] The Parish contends that the connectivity test is not satisfied because, although dredging implicates a connection to maritime law, the activities at issue were in furtherance of non-maritime oil and gas exploration and production activities.[95]

Next, the Parish argues that joinder of claims and parties is proper.[96] First, the Parish argues that while the individual defendants may have acted independently of each other in certain circumstances, their statutory, regulatory, and permit violations resulted in "cumulative impacts"

---

[90] *Id.* at p. 15 (*citing Romero*, 358 U.S. at 364-71).

[91] *Id.* at p. 16.

[92] *Id.* at p. 18.

[93] *Id.* at p. 20.

[94] *Id.* at p. 21.

[95] *Id.* at pp. 21–22.

[96] *Id.* at p. 22.

to the Operational Areas, and the "de-cumulation" of the claims asserted in this case would render any restoration impractical.[97] The Parish states that the cumulation of claims and joinder of the parties in this action is based on the existence of common issues of law and fact pertaining to activities that caused the complained-of property damage, and the practical and scientific necessity of considering cumulative impacts in fashioning a feasible and practical remedy.[98] Finally, the Parish contends that the remedies requested would not affect the OCS or coastal zone operations, or require any dismantling of energy-related infrastructure.[99]

**F.**     ***The Parish's Supplemental Memorandum in Support of Remand***

The Parish again reavers that there is no diversity in this case because the State is a real party in interest as to uses of state and local concern.[100] The Parish argues that the State is a real party in interest because the parishes are authorized by LA. REV. STAT. 49:214.36(D) to assert claims related to uses of state and local concern.[101] The Parish contends, again, that *Tapscott* should not be applied in this case because it has not expressly been adopted by the Fifth Circuit.[102] Finally, the Parish contends while the Defendants may have acted independently of each other in some circumstances, their statutory, regulatory and permit violations resulted in "cumulative impacts" to the Operational Areas.[103] According to the Parish, a single production site cannot be restored to its original condition

---

[97] *Id.* at p. 23.

[98] *Id.* at p. 24.

[99] *Id.*

[100] Rec. Doc. 52 at p. 2.

[101] *Id.* at pp. 3–4.

[102] *Id.* at p. 7.

[103] *Id.* at p. 11.

17

without considering the damages caused by neighboring production sites.[104]

## G.     *Defendants' Post-Hearing Opposition to Remand*

Following oral argument on the pending motion, Defendants submitted an additional memorandum, wherein they contend that the Parish is not authorized by statute to sue on behalf of the State, and cannot defeat diversity by merely claiming the right to sue on State permits.[105] Defendants argue that where, as here, the Parish has combined over 200 actions against nine different defendants spanning multiple decades, types of activity, and a broad geographic area, the misjoinder is egregious.[106] Defendants urge the Court to sever this action into nine cases corresponding to the nine defendants.[107] Defendants  reaver that the Parish lacks express authority to hold the State to be a real party in interest in this lawsuit.[108] Additionally, Defendants contend that SCLRMA does not expressly authorize the Parish to pursue the State's interests.[109] Defendants argue that Act 544 does not speak to what lawsuits the Parish is authorized to bring.[110]

Defendants next contend, again, that the petition triggers OCSLA jurisdiction because the controversy arises out of, or in connection with, an operation conducted on the OCS that involves the production of minerals.[111] According to Defendants, the petition seeks to restore the coastal zone,

---

[104] *Id.*

[105] Rec. Doc. 53 at p. 1.

[106] *Id.* at p. 5.

[107] *Id.* at p. 6.

[108] *Id.* at p. 7.

[109] *Id.* at p. 8.

[110] *Id.* at p. 10.

[111] *Id.*

across which a pipeline runs, to its original condition.[112] Finally, Defendants state that the petition triggers maritime jurisdiction because the Parish claims a violation of a permit that "expressly highlights the potential disruption to maritime commerce, explaining the proposed activity 'may present a hazard to . . . commercial navigation in the area.'"[113] Defendants ask the Court to exercise its maritime jurisdiction over this lawsuit or, in the alternative, to certify the question of removability to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).[114]

## H.      *Defendants' Notice of New Evidence Regarding Jurisdiction*

Defendants state that Louisiana Attorney General James D. "Buddy" Caldwell wrote a letter to the Parish's counsel, dated September 15, 2014, wherein he explicitly states that he "had no knowledge that [Plaintiff's counsel's] firm was purporting to represent the State of Louisiana in any suit filed pursuant to SLCRMA" and did not "authorize [Plaintiff's counsel's] firm to represent the State of Louisiana."[115] According to Defendants, this letter directly contradicts the Parish's purported representation of the State in this and the other SLCRMA lawsuits and, therefore, the Parish's attempt to defeat diversity jurisdiction by merely declaring to represent the State fails.[116]

## I.      *The Parish's Response to "New Evidence" Filed by Defendants*

In response to the "New Evidence" filed by Defendants, the Parish states that the September 15, 2014 letter concerns the request of the Cameron Parish Police Jury under La. Rev. Stat. 42:263 for approval of a resolution hiring the Parish's counsel to investigate and litigate claims on behalf

---

[112] *Id.* at p. 11.

[113] *Id.* (*citing* Rec. Doc. 37-8 at p. 10).

[114] *Id.*

[115] Rec. Doc. 57 at p. 1.

[116] *Id.*

of that Parish pursuant to SLCRMA.[117] The Parish argues that the claims of Cameron Parish are unrelated to the present case.[118] Additionally, the Parish states that its counsel never suggested that it had been retained by the Attorney General or Governor's offices, and that the circumstances surrounding the letter are questionable because it was filed via this Court's ECF filing system before it was received by Victor Marcello.[119] The Parish urges the Court to disregard the letter in its entirety.[120]

### J.    Defendants' Supplemental Memorandum in Opposition to Remand

On December 1, 2014, another section of this Court issued a decision in *The Parish of Plaquemines v. Total Petrochemicals & Refining USA, Inc.* ("*Total*"), remanding that case.[121] Defendants contend that *Total* is based on erroneous conclusions of law and that this case is distinguishable.[122] First, Defendants reaver that the Parish's claims are against different entities and are related to different activities that spanned different time periods, in different locations, and covered by different permits.[123] Defendants argue that if the Parish had combined just two actions, they would be misjoined, but "[w]here the Parish has combined over 229 such actions against 9 Defendants, spanning over 30 years and 27.9 square miles, it is clear that the misjoinder is

---

[117] Rec. Doc. 60 at p. 1.

[118] *Id.*

[119] *Id.* at p. 4.

[120] *Id.*

[121] Rec. Doc. 66 at p. 1 (*citing Total*, 2014 WL 6750649 (E.D. La. Dec. 1, 2014) (Zainey, J.))..

[122] *Id.*

[123] *Id.* at p. 2.

egregious."[124] Defendants contend that, despite the Parish's ultimate goal of "coastal restoration," it should not be allowed to cumulate disparate claims because liability for any given defendant will necessarily be based on the consequences of the permit violations that the Parish can prove as to that specific defendant.[125] Also, Defendants argue that this is not a tort case where defendants can be held solidarily liable, and that it is incorrect to conclude that claims otherwise egregiously misjoined were not so, simply because the Parish was pursuing a "common injury."[126] Defendants also reaver that the Parish lacks authority to sue on behalf of the State and cannot defeat diversity by simply declaring to do so. Defendants argue that the court in *Total* erred in concluding that the State was a party because the sole statute that the Parish claims authorizes it to sue on behalf of the State, LA. REV. STAT.§ 214.49:214.36(D), contains no express language granting such authority.[127]

Next, Defendants contend that OCSLA constitutes a broad grant of jurisdiction, and that the activities which the Parish alleges contributed to coastal erosion and other environmental harms occurred because of the Defendants' operations in exploring for and producing oil on the OCS.[128] Defendants also argue that any dispute that threatens to impair recovery of OCS minerals falls within OCSLA's jurisdictional grant.[129] Defendants cite *Ronquille v. Aminoil Inc.* to support their argument that OCSLA jurisdiction attaches even where both the injury-causing activity and the injuries

---

[124] *Id.*

[125] *Id.* at p. 4.

[126] *Id.* at p. 5.

[127] *Id.*

[128] *Id.* at p. 11 (*citing* Rec. Doc. 37-5).

[129] *Id.* at p. 9.

themselves occurred on land.[130] If the Court has any doubt as to OSCLA jurisdiction, Defendants

contend, remand should be denied and the question should be certified for interlocutory appeal.[131]

      Defendants reaver that the Parish's claims meet the test for maritime jurisdiction because

a "substantial number of permit claims" involve damage allegedly caused by vessels dredging in

navigable waterways.[132] Such claims, according to Defendants, involve permits that refer to potential

threats to navigation associated with the type of dredging work being performed, and accordingly

demonstrate the potential to have a disruptive impact on maritime commerce.[133] Defendants also ask

the Court to certify the question of the removability of maritime claims for interlocutory appeal

under § 1292(b).

## K.    *The Parish's Supplemental Memorandum in Support of Motion to Remand*

      The Parish reavers that diversity jurisdiction does not exist in this case because the State is

a real party in interest.[134] Next, the Parish argues that *Tapscott* does not apply in the Fifth Circuit,

but, even if it does, there is no factual support for Defendants' allegations of misjoinder.[135]

According to the Parish, this case is not limited to permit violations and does not turn solely on the

specific permits at issue.[136] Rather, the Parish contends, the petition also claims damages for

statutory and regulatory violations arising from defendants' multiple failures to obtain coastal use

---

[130] *Id.* (*citing Ronquille v. Aninoil, Inc.*, No. 14-164, 2015 WL 4387337 (E.D. La. Sept. 4, 2014) (Englehardt, J.)).

[131] *Id.* at p. 13.

[132] *Id.* at p. 15.

[133] *Id.*

[134] Rec. Doc. 67 at p. 3.

[135] *Id.* at p. 8.

[136] *Id.* at p. 9.

permits and, moreover, these violations resulted in "cumulative impacts" to the Operational Area.[137] The Parish avers that the remedy-focused reasoning of *Total* comports with SCLRMA's focus on remedies that account for cumulative impacts of multiple violations of the CZM laws, including the payment of restoration costs which are "feasible and practical."[138] Also, the Parish argues that there is a reasonable basis for predicting that the Louisiana Supreme Court would find that the CZM Laws do impose solidary liability because "[u]nder Louisiana law, if the consecutive and/or concurrent wrongful acts of defendants contribute in unknown proportions to property damage, defendants are solidarily liable because their obligations are indivisible."[139] The Parish additionally notes that none of the cases relied upon by Defendants involve a common injury to contiguous property.[140]

With respect to OCSLA jurisdiction, the Parish reavers that the *Deepwater Horizon* test requires that the case arise out of, or in connection with, an injury causing activity (i.e. an "operation") involving the exploration or production of minerals conducted on the OCS.[141] The Parish contends that OCSLA precludes an artificial limit as to the situs of the injuries, but not as to the situs of the activities that caused the injury.[142] The Parish reavers that the relief sought can be implemented without interruption of OCS production, operations, or defendants' activities, and without dismantling energy-related infrastructure in the coastal zone.[143] The Parish also argues that

---

[137] *Id.* at p. 10.

[138] *Id.* at p. 12.

[139] *Id.* at p. 12, n. 32.

[140] *Id.* at p. 13.

[141] *Id.* at p. 15.

[142] *Id.*

[143] *Id.* at p. 16.

the *Ronquille* decision is based on the assumption that the injury-causing activities and the injuries themselves occurred on land, but that the record for that case demonstrates that at least part of the negligent mishandling of asbestos that caused the alleged injuries may have occurred on the OCS.[144]

Finally, the Parish contends that Defendants cannot remove into admiralty, and that the theories proffered by Defendants have been unanimously rejected by judges in this district and by the Fifth Circuit's *dicta* in *Barker*.[145] Even if such claims were removable, the Parish argues, the focus of the removal allegations is on dredging activities, and which this Court has already concluded that coastal erosion caused by dredges in navigable waters does not have a potentially disruptive effect on maritime commerce.[146]

### III. Standard on a Motion to Remand

Pursuant to the general removal statute, a defendant may remove a state court action only if the action could have originally been filed in federal court.[147]  Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand.[148] In short, any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.[149]  Motions to remand from a

---

[144] *Id.* at p. 17 (*citing Ronquille*, No. 14-0164, WL 4387337 (E.D. La. 2014)).

[145] *Id.*

[146] *Id.* (*citing Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth. E. v. Tennessee Gas Pipeline Co., LLC*, 29 F.Supp.3d 808 (E.D. La. 2014) (Brown, J.).

[147] *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants.").

[148]  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

[149] *Vantage Drilling Co. v. Hsin–Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (*quoting Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.), cert. denied, 530 U.S. 1229 (2000)).

federal district court to a state court are governed by 28 U.S.C. § 1447(c), which provides, in part that: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[150]  The burden of establishing subject matter jurisdiction rests with the party seeking to invoke it.[151]

## IV. Law and Analysis

As previously stated, the parties dispute three potential bases for removal jurisdiction in connection with the Parish's motion to remand: (1) diversity jurisdiction pursuant to 28 U.S.C. §1332; (2) OCSLA jurisdiction pursuant to 43 U.S.C. § 1349(b)(1); and (3) admiralty jurisdiction pursuant to 28 U.S.C. § 1333.  The Court will address each in turn.

### A.      *Diversity Jurisdiction*

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.[152] In this case, complete diversity of citizenship is lacking on the face of the state court petition because at least one defendant is a citizen of Louisiana, and the Parish, as a subdivision of the State of Louisiana, is considered a citizen of Louisiana for diversity jurisdiction purposes.[153] Despite the presence of a non-diverse defendant in this lawsuit, Defendants argue that this Court has diversity jurisdiction because the Parish has fraudulently joined non-diverse defendants in order to defeat diversity jurisdiction.

The Fifth Circuit has long recognized two methods of fraudulent joinder: (1) actual fraud in

---

[150] 28 U.S.C. § 1447(c).

[151] *St. Paul Reinsur. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (*citing Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).

[152] *See* 28 U.S.C. § 1332(a).

[153] *See Moor v. Alameda County*, 411 U.S. 693, 717 (1973).

the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[154] Defendants do not allege that either of these forms of misjoinder are present in this case. Instead, they rely on the theory of fraudulent misjoinder,[155] which was first adopted by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*[156] In *Tapscott*, the Eleventh Circuit noted that under Federal Rule of Civil Procedure 20, joinder of defendants is proper when "(1) a claim for relief assert[s] joint, several, or alternative liability and aris[es] from the same transaction, occurrence, or series of transactions or occurrences, and (2) [contains] a common question of law or fact."[157] The Eleventh Circuit then concluded that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.[158]

The *Tapscott* rule holds that fraudulent misjoinder may have occurred where a diverse defendant is joined with a nondiverse defendant with whom it does not have joint, several or alternative liability, and the claims brought against the nondiverse defendant have no real connection to claims brought

---

[154] *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

[155] The Fifth Circuit refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. For clarity and consistency, the Court will use the term "fraudulent joinder" throughout.

[156] 77 F.3d 1353, 1360 (11th Cir. 1996).

[157] *Id.*

[158] *Id.* (emphasis added).

against the diverse defendant.[159] However, only the "egregious" misjoinder of parties with no real connection to each other, and not "mere" misjoinder, constitutes fraudulent joinder.[160] Stated differently, *Tapscott* misjoinder applies only where the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just, or when there is no palpable connection between the claims and parties.[161]

The Fifth Circuit has yet to expressly adopt the theory of "fraudulent misjoinder," but has mentioned it in several cases.[162] Many district courts within the Fifth Circuit – including this Court – have applied the theory of fraudulent misjoinder, reasoning that the Fifth Circuit has indicated its willingness to adopt the theory.[163] Accordingly, the Court applies the *Tapscott* theory of fraudulent misjoinder to the present case.

Courts differ regarding whether the state or federal rules determine the propriety of joinder in a removal analysis.[164] Courts that have applied state joinder rules have done so because:

---

[159] *Id.*

[160] *Id.*

[161] *See Kennedy v. Croft, LLC,* No. 13-0043, 2013 WL 3364388, at *3 (E.D. La. July 3, 2013) (Brown, J.).

[162] *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006) (*citing Tapscott* in stating that "[t]he fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or instate defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly . . . joined"); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (holding that the court did not have jurisdiction to issue a writ of mandamus and stating that its decision did not "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

[163] *See Kennedy v. Croft, LLC,* No. 13-0043, 2013 WL 3364388, at *4 (E.D. La. July 3, 2013) (Brown, J.). *See also Fine v. State Farm Fire and Cas. Co.*, No. 15-80, 2015 WL 1810138, at *2 (E.D. La. Apr. 21, 2015) (applying *Tapscott*); *Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC*, No. 14-1979, at *3 (E.D. La. Dec. 12, 2014) (same); *J.O.B. Investments, LLC v. Gootee Serv., LLC*, 908 F. Supp. 2d 771, 775-76 (E.D. La. 2012) (same).

[164] *See Davis v. Cassidy*, No. 11-1563, 2011 WL 6180054 (E.D. La. Dec. 13, 2011) (Vance, J.) ("As plaintiff here brought her action in state court and was required to follow state joinder rules in so doing, these state rules remain the relevant ones to determine the propriety of joinder in the Court's analysis of whether removal to federal court was

(1) applying state joinder rules "shares the same conceptual rationale underlying the doctrine of fraudulent joinder," in which "federal courts look to the substantive law of the state in which an action was brought to determine if a plaintiff is unable to state a claim against a nondiverse defendant;" and because (2) "plaintiffs brought their actions in state court and were required to follow state joinder rules when they did so," making state joinder rules "the relevant ones to determine the propriety of the joinder of plaintiffs and/or defendants after removal to federal court."[165]   The court finds these reasons persuasive, and accordingly will apply state joinder principles here.

Under the Louisiana Code of Civil Procedure, "[c]umulation of actions is the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants."[166] Under Article 463, parties may be joined in the same suit if: (1) there is a community of interest between the joined parties, (2) the cumulated actions are within the court's jurisdiction and venue is properly laid, and (3) the actions are mutually consistent and employ the same form of procedure.[167]  Of these factors, Defendants only contest the existence of a community of interest.

The Louisiana Supreme Court has defined "community of interest" as "the parties' causes of actions (or defenses) 'arising out of the same facts, or presenting the same factual and legal

---

warranted."); *Zeber v. E.L. Cretin, L.L..C.*, No.10-89, 2010 WL 5856063 at *3 (E.D. La. Nov. 30, 2010) (collecting cases). *See also Kennedy*, No. 13-43, 2013 WL 3364388 at *6 (considering both state and federal standards, and finding that the result would be the same under each).

[165]*Accardo v. Lafayette Ins. Co.*,  No. 06-8568, 2007 WL 525358 at *4 (E.D. La. Jan. 30, 2007) (Vance, J.);. *Accord Davis v. Cassidy*, No. 11-1563, 2011 WL 6180054 at *3 (E.D. La. Dec. 13, 2011) (Vance, J.).

[166] LA. CODE CIV. PROC. art. 461.

[167] LA. CODE CIV. PROC. art. 463.

issues.'"[168]   Elaborating on the meaning of "community of interest" in Article 463, the Louisiana Fourth Circuit Court of Appeal has stated that a "community of interest is present between different actions or parties, where enough factual overlap is present between the cases to make it commonsensical to litigate them together."[169]   The community of interest requirement "reflects a policy-value . . . to avoid where possible multiplicity of actions in the interests of judicial efficiency, providing it can be done without unfairness to the parties affected."[170] The Louisiana Supreme Court has characterized the community of interest standard as "liberal."[171]

Defendants argue that there is no community of interest in this case because the Parish has joined claims against nine different Defendants with respect to activities that occurred in different locations, at different times, and utilizing different policies, practices, technologies, and equipment.[172] Additionally, Defendants argue that there is no shared or common liability in this case.[173] Defendants cite several cases in support of their argument that the Parish's joinder is improper. First, *Broussard v. Hilcorp Energy Co.* involved property contamination on five noncontiguous tracts with multiple leases and 21 oil and gas companies allegedly at fault.[174] The court reasoned that proof of damages and liability would be different for each party, and thus, "[it could not] say that there [was] enough factual overlap present between all the actions to make it

---

[168] *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So.2d 144, 147 (La. 1975).

[169] *Mauberret–Lavie v. Lavie*, 850 So.2d 1, 2 (La. App.4 Cir. 2003), *writ denied*, 861 So.2d 569 (La. 2003).

[170] LA. CODE CIV. PROC. art. 463, Comment (c).

[171] *Stevens*, 309 So.2d at 147.

[172] Rec. Doc. 37 at pp. 11-12.

[173] *Id.* at p. 13.

[174] *Broussard v. Hilcorp Energy Co.*, 998 So.2d 946, 949  (La.App. 3 Cir. 12/10/08, 4).

commonsensical to litigate them together" because "different parties and combinations of parties are alleged to have contributed to the contamination on each, and the times at which contamination allegedly occurred differs for each property."[175] In *Global Oil Tools, Inc. v. Barnhill*, a case involving claims for breach of contract, return of stock, and unpaid wages, another section of this Court found that there was no community of interest because there were no common facts among the three alleged tortfeasors relating to liability, and the causes of action brought against each defendant were different.[176] *Accardo v. Lafayette Ins. Co.* involved an attempt by eighteen individual homeowners, each with their own separate property damage resulting from Hurricane Katrina, to join their individual claims against various insurers in a single action.[177] *Dietz v. Superior Oil Co.* involved an attempt to cumulate claims against numerous oil and gas operators for damages to non-contiguous tracts of land.[178]

The present case is distinguishable from those cited by Defendants. First, unlike in *Broussard, Global Tools*, *Accardo*, and *Dietz*, this case involves a common alleged injury: the Parish alleges a single, indivisible injury caused by the cumulation of similar types of activities, including the drilling and operation of oil and gas wells, the construction and use of earthen waste

---

[175] *Id.* at 953.

[176] *Global Oil Tools, Inc. v. Barnhill*, No. 12-1507, 2013 WL 3070840, at *5 (E.D. La. June 17, 2013) (Barbier, J.) ("In the instant case, while Global Oil was the subject of the sale that led to the Barnhills' claims in Counts I and II, it has no other involvement with those claims and cannot face any liability for the transactions at issue in the claims. Likewise, the claims in Counts III and IV, which arose approximately five to six years after the claims in Counts I and II, have no relation to Lyamec or Global Libya and, as alleged, do not arise out of any of the previous transactions involving the sale of Global Oil. Rather, the claims in Counts III and IV are wholly separate both legally and factually and will stand or fail on an independent determination of liability.").

[177] *Accardo v. Lafayette Ins. Co.*, 06-8568, 2007 WL 325368, at *5 (E.D. La. Jan. 30, 2007) (Vance, J.).

[178] *Dietz v. Superior Oil Co.*, 129 So.3d 836, 843 (La.App. 3 Cir. 12/11/13), *reh'g denied* (Jan. 30, 2014).

pits, the discharge of oil field wastes, and the dredging of canals in the Operational Area.[179] Moreover, unlike in *Broussard* and *Dietz*, this case involves a particular, well-defined geographic area: a single oilfield covering  27.9 contiguous square miles.[180] Here, the Parish cumulated its claims against Defendants based on geographical and historical similarities between the disputed permits and activities, as well as the cumulative impact of the alleged permit violations. All of the Parish's claims are governed by Louisiana's CZM Laws and permits issued thereunder.

Defendants contend that their individual liability will turn on different permits issued to different defendants at different times. However, this does not render the Parish's claims "wholly distinct" from one another.[181] When the collective action of several defendants is alleged to have damaged the plaintiff's property,  misjoinder does not occur simply because the plaintiff joins all of the allegedly accountable parties in a single action.[182] Here, there is an overall injury for which each defendant may have some degree of liability, and it is commonsensical to proceed in a single lawsuit in a single forum.[183] To proceed otherwise may result in piecemeal litigation of overlapping factual and legal issues and inconsistent judgments.

As stated above,  "mere misjoinder" does not constitute fraudulent misjoinder. Based on the

---

[179] Rec. Doc. 1-1 at ¶ 3.

[180] Rec. Doc. 73-3 at ¶ 4.

[181] *Tapscott*, 77 F.3d at 1360. *See also Terrebonne Parish Sch. Bd. v. Texaco, Inc.*, Civ. A. No. 98-0115, 1998 WL 160919, at *3 (E.D. La. Apr. 3, 1998) (joinder of two companies who "independently drilled separate wells in separate canals at different times" did not constitute fraudulent misjoinder because "[t]he marshland is of such a porous nature that there is a considerable probability that activities or construction in one area could affect the water level and subsequent land erosion elsewhere").

[182] *See Gill v. City of Lake Charles*, 119 La. 17, 24, 43 So. 897, 899 (1907).

[183] See *Turner v. Murphy Oil*, 2007 WL 2407310, *6 (E.D.La. 2006) (*citing Miller v. Commercial Union Insurance Co.*, 305 So.2d 560, 562-653 (La. App. 2nd Cir.1974) (finding sufficient overlap between plaintiffs claims against the defendants thus precluding a finding of egregious misjoinder because "there is a question of which defendant is responsible for what part of the damage to the plaintiff's property)).

foregoing, the Court finds that there is sufficient factual and legal overlap between the Parish's claims against the individual Defendants for it to be "commonsensical to litigate them together."[184] The Court is additionally guided by Fifth Circuit precedent which instructs district courts to strictly construe removal statutes and resolve any doubts as to the propriety of removal in favor of remand.[185] Accordingly, because the joinder of the non-diverse defendant, Campbell Energy, is not so egregious as to constitute fraudulent misjoinder, the Court finds that it lacks diversity jurisdiction in this case.

The Court is aware that the parties have devoted a significant portion of their briefing to the issue of whether the State of Louisiana is a real party in interest in this case. However, because the Court has determined that it lacks diversity jurisdiction over this lawsuit, it need not determine whether the State is a real party in interest at this time.

## B.   *OCSLA Jurisdiction*

Defendants next argue that OCSLA establishes original federal question jurisdiction.[186] Defendants contend that this case involves an "operation" on the OCS because the permits at issue are associated with the modification and maintenance of pipelines that form part of an OCS operation.[187] Defendants also argue that the suit arises out of, or in connection with, an OCS operation because the dispute affects the efficient exploitation of minerals from the OCS.[188]

Pursuant to OCSLA, as codified at 43 U.S.C. § 1349(b)(1), the district courts of the United

---

[184] *See id.*

[185] See *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[186] Rec. Doc. 1 at p. 14.

[187] *Id.* at p. 17.

[188] *Id.* at pp. 18-19.

States have jurisdiction over claims "arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . ."[189] This jurisdictional grant is broad,[190] and "[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply."[191]

As the Fifth Circuit recently explained in *Deepwater Horizon*, "[c]ourts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."[192] With respect to the first prong of this analysis, although OCSLA itself does not define "operation," the Fifth Circuit has stated that operation is "the doing of some physical act."[193] "Exploration, development, or production" respectively refer to "the processes involved in searching for minerals on the OCS; preparing to extract them by, inter alia, drilling wells and constructing platforms; and removing the minerals and transferring them to shore."[194] The second prong of the jurisdictional test "require[s] only a 'but for' connection" – that is, a court must evaluate whether but for the operation

---

[189] 43 U.S.C. § 1349(b)(1).

[190] *See, e.g.*, *Deepwater Horizon*, 745 F.3d at 163 (OCSLA's jurisdictional grant is "straightforward and broad"); *Barker*, 713 F.3d at 213 ("The jurisdictional grant in OCSLA is broad, covering a 'wide range of activities occurring beyond the territorial waters of the states.'"); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) ("The jurisdictional grant, contained in 43 U.S.C. § 1349(b)(1), is very broad.").

[191] *Barker*, 713 F.3d at 213.

[192] *Deepwater Horizon*, 745 F.3d at 163.

[193] *Tennessee Gas Pipeline*, 87 F.3d at 154 (internal quotation marks and citations omitted).

[194] *Id.* at 154–55 (citing 43 U.S.C. § 1331(k)–(m)).

would the case have arisen.[195] *Deepwater Horizon* clarified that there is no situs requirement for jurisdiction under OCSLA, explaining that "[b]ecause federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, 43 U.S.C. § 1349, the statute precludes an artificial limit based on situs."[196] Under *Deepwater Horizon*, a court must determine the connection between a case and an operation only *after* it has established that the activities that caused the injury constituted an operation on the OCS.[197]

　　Applying the test described in *Deepwater Horizon*, the Court first examines whether "the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals."[198]  Thus, the Court must determine the nature of the activities that caused the injury. In its petition, the Parish alleges that Defendants' oil and gas exploration, production and transportation operations associated with the development of the Operational Area in Jefferson Parish were conducted in violation of the CZM Laws, and that those activities caused substantial damages to land and waterbodies located in the "Coastal Zone" within the Parish.[199] The Parish additionally alleges that Defendants have failed to clear, revegetate, detoxify, and restore the mineral and production sites and other areas affected by their operations and activities within the Operational Area to their original condition.[200] Therefore, the activities at

---

[195] *Deepwater Horizon*, 745 F.3d at 163.

[196] *See Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth. E. v. Tennessee Gas Pipeline Co., LLC*, 29 F.Supp.3d 808, 834-35 (E.D. La. 2014) (Brown, J.) (citing *In re Deepwater Horizon*, 745 F.3d at 164).

[197] *See id.* at 837. *See also Plains Gas Solutions, LLC v. Tennessee Gas Pipeline Co., LLC*, 46 F. Supp .3d 701, 705 (S.D. Tex. 2014); *Jefferson Parish v. Equitable Petroleum Corp.*, No. 13-6714 (E.D. La. May 18, 2015) (Vance, J.).

[198] *Id.* at 163.

[199] Rec. Doc. 1-2 at ¶ 3.

[200] *Id.* at ¶ 16.

34

issue are those related to oil and gas exploration, production, and transportation.

The next question the Court must address is whether these activities constitute an operation conducted on the OCS. As noted above, an operation is defined as "some physical act."  This Court has held previously that activities causing a plaintiff's alleged injuries which occur on Louisiana's coastal lands or within Louisiana's territorial waters cannot be characterized as "an operation conducted on the outer Continental Shelf" that involved the exploration and production of minerals."[201] In this case, all of the acts alleged by the Parish took place within the Operational Area in Jefferson Parish, not on the OCS and, accordingly, they do not constitute "physical acts *on* the OCS." Thus, the first prong of the Fifth Circuit test for OCSLA jurisdiction is not satisfied, and the Court need not determine whether the second prong of the OCSLA test is met.

Defendants argue that the alleged permit violations at issue stem from the construction and maintenance of an OCS pipeline that carries minerals from the OCS to shore, and therefore triggers OCSLA jurisdiction.[202]  This Court is not persuaded by Defendants' argument that the permits compel OCSLA jurisdiction because they reference the OCS and regulate a pipeline network connected to the OCS network. Rather, as stated above, there must be an "operation on the outer Continental Shelf" to satisfy the first element of OCSLA jurisdiction, and there is no such operation here. The mere connection of a pipeline to and subsequent flow of minerals from the OCS does not constitute an operation *on* the OCS. Defendants essentially urge this Court to be the first to find that OCSLA jurisdiction is satisfied where a pipeline transports minerals from the OCS to coastal territory. Such a finding, however, would expand OCSLA jurisdiction beyond its intended purpose

---

[201] *See Bd. of Comm'rs*, 29 F. Supp. 3d at 836.

[202] Rec. Doc. 66 at p. 9.

and contravene Fifth Circuit precedent holding that an operation must occur *on* the OCS when a cause of action alleges a physical act.

Defendants' reliance on *Ronquille* does not change this result. In *Ronquille*, the plaintiff alleged that he had been exposed to asbestos through his work, which "included the unloading and loading of barges, other boats, and trucks that transported equipment and pipe from OCS platforms."[203] The *Ronquille* court determined that this activity constituted direct support for OCS rigs, and thus provided a "sufficient connection to the operations on the OCS."[204] However, this finding goes to the second element of the OCSLA jurisdictional test; in *Ronquille*, there was never a question as to whether the facts satisfied the operational prong. In this case, on the other hand, Defendants have not demonstrated that the first element of the OCSLA test is met. The Court finds, based on the foregoing, that it does not have jurisdiction over this case pursuant to OCSLA.

## C.    *Maritime Jurisdiction*

Defendants argue that the Parish's claims arise under maritime law because the injuries claimed in the Petition were allegedly caused by dredging vessels on navigable waterways.[205] Defendants also argue that they properly removed this case pursuant to the 2011 amendments to the general removal statute.[206] The Parish contends that the activities at issue are not maritime in nature because they did not occur on navigable waterways, nor did they demonstrate a substantial relationship to traditional maritime activity. Additionally, the Parish argues that maritime claims

---

[203] *Ronquille v. Aninoil, Inc.*, No. 14-164, 2015 WL 4387337 (E.D. La. Sept. 4, 2014) (Englehardt, J.).

[204] *Id.*

[205] Rec. Doc. 37 at p. 42.

[206] *Id.* at p. 35

filed in state court are not removable absent an independent basis for jurisdiction in federal court.[207]

In determining whether admiralty jurisdiction exists over a tort claim, courts apply the two-part analysis set forth by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock*.[208] The first part, known as the location test, asks "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water."[209] The second part, known as the connection test, raises two issues. First, a court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce."[210] Second, a court must examine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[211]

However, the Court need not resolve whether the Parish's claims arise under maritime law because, even if they do, the claims would not be removable absent an independent basis for federal subject matter jurisdiction.[212] Defendants argue that they properly removed this case under federal maritime law because the 2011 amendment to 28 U.S.C. § 1441 allows removal of maritime claims without an independent basis for federal jurisdiction.

Article III of the U.S. Constitution extends the judicial power of the United States to "all

---

[207] Rec. Doc. 67 at p. 17.

[208] 513 U.S. 527 (1995).

[209] *Id.* at 534.

[210] *Grubart*, 513 U.S. at 534 (internal citations and quotation marks omitted).

[211] *Id.* at 534 (internal citations and quotation marks omitted).

[212] The Court notes, however, that it has previously held that coastal erosion, by itself, does not pose more than a fanciful risk to commercial shipping and, accordingly, does not satisfy the "connection" prong of the *Grubart* test. *See Bd. of Comm'rs*, 29 F.Supp.3d at 826.

Cases of admiralty and maritime Jurisdiction."[213] Congress codified this jurisdictional grant in the Judiciary Act of 1789, which provides:

> That the district courts shall have, exclusively of the courts of the several States . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . within their respective districts as well as upon the high seas; saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it.[214]

That last sentence, commonly referred to as the saving-to-suitors clause, has been reworded over the years, but "its substance has remained largely unchanged."[215]

Courts have traditionally interpreted the Judiciary Act to create two alternate bases for federal maritime jurisdiction.[216] First, courts have instructed that the Act grants exclusive federal jurisdiction to claims proceeding in admiralty alone, meaning "those maritime causes of action begun and carried on as proceedings *in rem*, or where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce the lien."[217] If a maritime plaintiff sues in state court seeking common-law remedies, however, the case falls within the saving-to-suitors clause's "exception" to exclusive federal jurisdiction.[218] Thus, until the passage of the Judiciary Act of 1875, federal courts could hear common-law maritime claims, or "saving

---

[213] U.S. Const., Art. III, § 2.

[214] Ch. 20, § 9, 1 Stat. 73.

[215] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001); *see also* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled . . . .").

[216] *Romero v. Intern. Terminal Operating Co.*, 358 U.S. 354, 362-63 (1959).

[217] *Madruga v. Superior Court of State of Cal. in & for San Diego Cnty.*, 346 U.S. 556, 560 (1954).

[218] *See Romero*, 358 U.S. at 362 (maritime actions seeking common-law remedies fell within the saving-to-suitors clause and were "traditionally administered by common-law courts of the original States"); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 222 (5th Cir. 2013) ("However, admiralty jurisdiction is not present in this suit because Barker filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction.").

clause cases," only when another source of federal jurisdiction existed.[219] Specifically, courts have historically interpreted the savings clause to require that "[e]xcept in diversity cases, maritime litigation brought in state courts could not be removed to the federal courts."[220]

The Judiciary Act of 1875 extended federal jurisdiction to "all suits of a civil nature at common law or in equity . . . arising under the Constitution or laws of the United States," creating federal question jurisdiction now codified at 18 U.S.C. § 1331. In *Romero v. International Terminal Operating Company*, the United States Supreme Court rejected the argument that saving clause claims fell within "the laws of the United States" for purposes of federal question jurisdiction.[221] In reaching this conclusion, the Court relied on the "long-established and deeply rooted" dichotomy between pure admiralty claims, which were cognizable in federal court, and saving clause claims, which were cognizable in federal court only if there was an independent basis for the exercise of federal jurisdiction.[222] The Court "uncovered no basis [for]  . . . changing the method by which federal courts had administered admiralty law from the beginning," and recognized that to hold otherwise would eliminate "the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal . . . since saving-clause actions would then be freely removable under § 1441 of Title 28."[223] Since *Romero*, federal courts have continued to hold that saving clause claims cannot be removed from state court unless there is an independent basis for federal

---

[219] *Romero*, 358 U.S. at 362 ("Since the original Judiciary Act also endowed the federal courts with diversity jurisdiction, common-law remedies for maritime causes could be enforced by the then Circuit Courts when the proper diversity of parties afforded access.").

[220] *Id.* at 363.

[221] *Id.* at 360.

[222] *Id.* at 372.

[223] *Id.* at 368, 371-72.

jurisdiction.[224]

Defendants contend that Congress' 2011 amendments to the general removal statute, 28 U.S.C. § 1441, eliminates the historical prohibition on removing saving clause cases to federal court.[225] Prior to 2011, § 1441 provided that:

(a) *Except as otherwise expressly provided by Act of Congress*, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction *founded on a claim or right arising under the Constitution, treaties or laws of the United States* shall be removable without regard to the citizenship or residence of the parties. Any *other such action* shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.[226]

Construing this version of the statute, the Fifth Circuit reasoned in *In re Dutile* that general maritime claims did not "arise [ ] under the Constitution, treaties or laws of the United States," and accordingly that such claims fell within the category of "[a]ny other such action" under Section 1441(b).[227] Thus, admiralty and maritime claims could be removed to federal court "only by non-forum defendants and only where there [was] complete diversity of citizenship."[228] The Fifth

---

[224] *See, e.g.*, *Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 255 (5th Cir. 1961) (holding that *Romero* "made clear that except in diversity cases, maritime litigation brought in state courts could not be removed to the federal courts."); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, No. 14-0375, 2014 WL 4489618, at *3 (E.D. La. Sept. 10, 2014) (stating that "[f]or more than 200 years," a maritime action brought in state court was not removable to federal court "based on admiralty jurisdiction alone.").

[225] Rec. Doc. 37 at p. 35.

[226] 28 U.S.C. § 1441 (emphasis added).

[227] *In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991).

[228] *Id.* ("The practical effect of these provisions is to prevent the removal of admiralty claims pursuant to § 1441(a) unless there is complete diversity of citizenship (predicated upon out-of-state defendants).").

Circuit reached this conclusion by "constru[ing] the  plain language of § 1441(b), read in conjunction with *Romero*," and stated that "Congress simply has not supplied the district courts with removal jurisdiction of admiralty claims absent diversity."[229]

 In the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Congress revised § 1441 as follows:

> (a) Generally. – Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

> (b) Removal based on diversity of citizenship. –
> (1)     In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
> (2)     A civil action *otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title* may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.[230]

A comparison of the old and new versions of  § 1441 indicates that while subsection (a) remained basically the same, Congress removed the  "original jurisdiction"  and  "other such action" language from  subsection (b).

The Fifth Circuit discussed the 2011 amendments in *Barker v. Hercules Offshore Inc.*, which was decided under the previous version of section 1441(b).[231] In *Barker*, the Fifth Circuit stated that "even though federal courts have original jurisdiction over maritime claims under 28 U.S.C. § 1333,

---

[229] *Id.*

[230] 28 U.S.C. § 1441 (Supp. 2011).

[231] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013).

they do not have removal jurisdiction over maritime cases which are brought in state court."[232] Rather, "such lawsuits are exempt from removal by the 'saving to suitors' clause . . . and therefore may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship."[233] The Fifth Circuit interpreted the current version of § 1441(b) as a "clarification," rather than an amendment, and stated that section 1441(b)'s forum defendant rule applies only in actions removed on the basis of diversity jurisdiction.[234] The Court, relying on *Dutile*, further noted that "cases invoking admiralty jurisdiction under 28 U.S.C. § 1333 may [still] require complete diversity prior to removal."[235]

Notwithstanding the Fifth Circuit's reliance on *Dutile* in *Barker*, several district courts have held that the 2011 amendment rendered saving clause claims freely removable under 28 U.S.C. § 1441.[236] For example, in *Ryan v. Hercules Offshore, Inc.*, a district court in the Southern District of Texas dismissed *Barker*'s discussion of the new subsection (b) as dicta, and found that section 1441(a)'s reference to the federal court's "original jurisdiction" means that saving clause claims initially filed in state court are now removable, since such cases fall within a federal court's original

---

[232] *Id.* at 219.

[233] *Id.*

[234] *Id.* at 223 (*citing* H.R.Rep. No. 112–10 "explaining that the updated version is a clarification, as opposed to an amendment, of the original statute").

[235] *Id.* (*citing Dutile*, 935 F.2d at 63).

[236] *See Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, 2014 WL 2739309, *2 (S.D. Tex. June 17, 2014) (Atlas, J), remanded on other grounds on reconsideration, 2014 WL 4167807 (S.D.Tex. Aug. 20, 2014); *Provost v. Offshore Service Vessels, LLC*, 2014 WL 2515412, *3 (M.D. La. June 4, 2014) (Dick, J); *Garza v. Phillips 66 Company*, 2014 WL 1330547, *4 (M.D. La. April 1, 2014) (Dick, J); *Carrigan v. M/V AMC AMBASSADOR*, 2014 WL 358353, *2 (S.D.Tex. Jan. 31, 2014) (Werlein, J); *Bridges v. Phillips 66 Co.*, 2013 WL 6092803, *5 (M.D.La. Nov. 19, 2013) (Brady, J); *Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322, *3 (S.D. Tex. June 18, 2013) (Rosenthal, J).

jurisdiction under 28 U.S.C. § 1333.[237] Defendants urge this Court to adopt *Ryan*'s reasoning.

This Court is not persuaded by the *Ryan* court's reasoning, which overlooks the long history of maritime removal jurisdiction.  First, the prohibition on removing saving clause cases absent an independent ground for federal jurisdiction is a historic rule grounded in both tradition and principles of federalism.[238] If Congress had intended to open federal courts to a new class of cases that had been historically excluded, "we can hardly suppose that it would have failed to use some appropriate language to express that intention."[239] To hold otherwise "would disrupt traditional maritime policies and quite gratuitously disturb a complementary, historic interacting federal-state relationship."[240] Accordingly, given the absence of clear indication that Congress intended to disrupt the "long-established and deeply rooted" prohibition on removing saving clause cases from state court, and considering the Fifth Circuit's characterization in *Baker* of the 2011 amendments as a "clarification" of the provisions in the removal statute, the Court is not persuaded that saving clause claims are now freely removable.

Moreover, the *Ryan* court's reasoning is based on the mistaken premise that 28 U.S.C. § 1333 confers original jurisdiction over maritime cases brought at law, as opposed to in admiralty. As stated above, maritime claims initiated in state court are, by definition, brought at common law under the saving to suitors clause as an "exception" to the original jurisdiction of the federal courts.[241] Federal courts have original jurisdiction over maritime claims brought at admiralty under

---

[237] *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772, 778 (S.D. Tex. 2013).

[238] *See Romero*, 358 U.S. at 372.

[239] *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107 (1941).

[240] *Romero*, 358 U.S. at 375.

[241] *See Romero*, 358 U.S. at 362; *Barker*, 713 F.3d at 222.

28 U.S.C. § 1333, but they do not have removal jurisdiction over maritime cases which are brought at common-law in state court.[242] If state court maritime cases were removable under § 1333, the effect would be tantamount to considering all maritime law claims as part of federal question jurisdiction under § 1331, eviscerating the saving to suitors clause and undermining the holding and policies discussed at length in *Romero*.

This Court finds that general maritime law claims are not removable under § 1333 as part of the original jurisdiction of the court absent an independent basis of federal jurisdiction. In so holding, the Court joins the majority position, which is also held by every other section of this Court

---

[242] *Barker*, 713 F.3d at 219. *See also Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) ("Tennessee Gas's maritime claim is not removable under the first sentence of 28 U.S.C. § 1441(b) by falling within the admiralty jurisdiction of the federal courts.").

to have considered the issue.[243]   Thus, the Court finds that maritime law does not provide an

independent basis for exercising removal jurisdiction for the claims asserted by the Parish.[244]

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that this case is administratively reopened.

**IT IS FURTHER ORDERED** that the Parish's "Motion to Remand"[245] is **GRANTED** and

that this case is **REMANDED** to the 24th Judicial District for the Parish of Jefferson pursuant to

28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

**NEW ORLEANS, LOUISIANA**, this __7th__ day of July, 2015.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[243] *See* Wright and Miller, 14A Fed. Prac. & Proc. § 3674 (4th ed.) ("Several district courts that have considered the issue since have followed the reasoning of the *Ryan* court, but a majority have proffered reasons why admiralty jurisdiction does not independently support removal."). *See also Yavorsky v. Felice Navigation, Inc.*, 2014 WL 5811699, *5 (E.D. La. Nov. 7, 2014) (Lemmon, J); *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, ——F.Supp.2d ——, 2014 WL 4231186, *6 (E.D. La. Aug. 26, 2014) (Fallon, J); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, 2014 WL 4489618, *4 (E.D. La. Sep. 10, 2014) (Feldman, J); *Riley v. Llog Exploration Co. LLC*, 2014 WL 4345002, *3 (E.D. La. Aug. 28, 2014) (Milazzo, J);  *Gregoire v. Enter. Marine Servs., LLC*, No. 14-840, 2014 WL 3866589, at *3 (E.D. La. Aug. 6, 2014) (Duval, J.); *Grasshopper Oysters, Inc. v. Great Lakes Dredge & Dock, LLC*, 2014 WL 3796150, *2 (E.D. La. July 29, 2014) (Berrigan, J); *Perrier v. Shell Oil Co.*, 2014 WL 2155258, *3 (E.D. La. May 22, 2014) (Zainey, J).

[244] Having determined that the Parish's claims, even if they arise under maritime law, are not removable to federal court, the Court need not reach whether abstention under *Burford v. Sun Oil* is appropriate in this case.

[245] Rec. Doc. 22.